IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN SMITH, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-CV-5782 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| SCIENCE 37 HOLDINGS, INC., a Delaware | ) | |
| Corporation; and SCIENCE 37, INC., a Delaware | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Stephen Smith brought an initial five-count complaint against defendants Science 37 Holdings, Inc. ("Science 37"), and Science 37, Inc. (collectively, "defendants") for allegedly fraudulently or negligently misrepresenting the fair market value of his stock options with Science 37. Plaintiff filed suit in the Circuit Court of Kane County, Illinois, before defendants removed the case to federal court. On August 28, 2023, defendants filed their first motion to dismiss plaintiff's complaint for failure to state a claim, and on September 18, 2023, plaintiff filed his six-count amended complaint. Count I alleges violations of § 10(b) of the Securities and Exchange Act of 1934 and its implementing regulation, Securities and Exchange Rule 10b-5; Count II alleges common law fraud; Count III alleges negligent misrepresentation; Count IV alleges breach of contract; Count V alleges breach of the covenant of good faith and fair dealing; and Count VI alleges promissory estoppel. On October 9, 2023, defendants moved to dismiss plaintiff's amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 17). For the reasons stated below, the court grants defendant's motion.

1

## BACKGROUND

According to the amended complaint, on or about January 1, 2016, plaintiff became an advisor to Science 37 pursuant to an advisor agreement. The advisor agreement granted plaintiff the option to purchase 32,000 shares of Science 37's common stock, vesting over a 36-month period, as compensation for his services. The advisor agreement stated that plaintiff was "solely responsible for all taxes" related to his compensation under the advisor agreement. Plaintiff's stock options, which were subject to the terms and conditions of Science 37's 2015 Stock Plan ("the Stock Plan"), fully vested effective January 1, 2019.

On May 7, 2021, Science 37 publicly announced that it entered into a merger agreement, and subsequently would be publicly listed on the NASDAQ. Plaintiff alleges that he began considering whether to exercise his options after defendant's merger announcement, and in preparation, reviewed Science 37's fair market value on Carta, a third-party service that lists information for option holders. Per the Stock Plan, a share's "fair market value" is determined "by the Board of Directors in good faith." Plaintiff alleges that whenever he had questions about his stock options, defendants directed him to Carta, and thus, he reasonably relied on the information on Carta to determine the fair market value of his options.

Moreover, plaintiff alleges that defendants "controlled what information on Carta is available to options holders," and defendants "had a duty and obligation to make certain that the information available on Carta to options holders was up-to-date and accurate." According to plaintiff, Science 37 used Carta "to manage its equity and capitalization table" and "to conduct required valuations of its stock, under Internal Revenue Code § 409A," which "are necessary to determine employees' tax liability for their stock options." Plaintiff states that § 409A, in relevant part, requires valuations of stock options "the sooner of every twelve months or the

occurrence of any material event that may affect their stock price." Plaintiff argues that the merger constitutes such a material event.

On May 28, 2021, plaintiff allegedly exercised his options for 32,000 shares at a fair market value of $1.48/share and an exercise price of $0.19/share based on information from Carta. Plaintiff states that he "planned for a tax liability no greater than $16,000 resulting from his options exercise." Defendants' Chief Executive Officer, David Coman ("Coman"), and then-General Counsel, Laura Podolsky ("Podolsky"), approved plaintiff's exercise on June 8 and June 9, 2021. According to plaintiff, Coman and Podolsky confirmed the number of exercised shares, their fair market value, and their exercise price "[i]n their approval and consistent with the information that Smith relied on from Carta." Plaintiff further alleges that Coman and Podolsky's approval "subsequently confirmed" his expectation of tax liability no greater than $16,000 following his exercise.

Plaintiff alleges, however, that "the information provided to him by Defendants through Carta (and then independently confirmed by the Defendants through Coman and Podolsky) was severely misstated." Plaintiff states that he did not receive the terms of Science 37's merger until approximately September 26, 2021, when Science 37 sent him a copy of the merger agreement and its notice of solicitation of written consent. He alleges that the terms of the merger were not available to him from another source prior to September 2021.

In February 2022, Science 37 issued plaintiff an Internal Revenue Service ("IRS") Form 1099 document that stated a "far greater income from [plaintiff's] exercise than he was expecting." Plaintiff alleges that he believed that the Form 1099 was mistaken, and consequently, he followed up with defendants. On March 21, 2022, Bill Gentry ("Gentry"), defendants' vice president, informed plaintiff that he had not exercised his options at

$1.48/share, but rather at $9.06/share, allegedly resulting in tax liability over $200,000 (12.5 times greater than he planned).[1]  Plaintiff claims that he was "unable to immediately sell his stock at the fair market value price at which he was taxed to cover the unexpected substantial tax liability due to a 'lock out period' that prevented [him] from selling his stock until April 5, 2022."  According to plaintiff, if he knew that Science 37 stock's fair market value and exercise price would lead to such high tax liability, he would not have exercised his options when he did. Plaintiff states that he "had to cover the more than $200,000 tax liability from other sources, causing significant financial difficulty to him and his family."

According to defendants, plaintiff "chose to cover his tax liability 'from other sources' and to hold onto his Science 37 shares, presumably hoping they would increase in value other time."  Instead, defendants maintain that the shares have decreased in value.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6).  For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Claims involving fraud, including claims pursuant to SEC Rule 10b-5, are subject to a heightened pleading standard. Fed. R. Civ. Pro. 9(b); Camasta v. Jos. A. Bank Clothiers, Inc.,

---

[1] According to defendants, plaintiff's alleged tax liability is "wildly unrealistic" and "implausible," with a "tax rate of more than 70%."

761 F.3d 732, 736 (7th Cir. 2014); In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 280–81 (7th Cir. 1996). Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). The Seventh Circuit has interpreted the 9(b) standard to require a plaintiff to "describe[e] the who, what, when, where, and how of the fraud." Anchorbank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011).

## DISCUSSION

According to defendants, plaintiff's amended complaint fails to state a claim because it demonstrates that the proximate causes of plaintiff's greater-than-anticipated tax liability were his own planning and his decision not to sell his shares after exercising his option, not defendants' actions. Further, defendants argue that plaintiff has failed to plausibly plead essential elements of each claim. Specifically, defendants argue that plaintiff has not plausibly pled that Science 37: made a material misrepresentation or omission; acted with knowledge or belief of the falsity of the fair market value information; or intended to induce plaintiff act in reliance on the fair market value information on Carta. Defendants also argue that plaintiff has not plausibly alleged that they acted intentionally carelessly in ascertaining the truth of their statements on Carta, or that they had a duty to communicate accurate information about their stock to plaintiff. Last, defendants argue that plaintiff has not plausibly alleged that defendants breached a promise to plaintiffs.

The court begins with defendants' argument that plaintiff has not plausibly pled that their representations on Carta proximately caused plaintiff's harm, which is a necessary component of all plaintiff's claims. First, defendants argue extensively about the causation requirement for claims pursuant to § 10(b). See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 159 (2008). Section 10(b) makes it unlawful for any person to "use or employ, in

connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37 (2011) (quoting 15 U.S.C. § 78j(b)). Rule 10b-5 implements § 10(b) by making it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Matrixx Initiatives, 563 U.S. at 37 (quoting 17 C.F.R. § 240.10b-5(b)).

To establish a claim under § 10(b) and Rule 10b-5, a plaintiff must demonstrate: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security (also referred to as "transaction causation"); (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. See Stoneridge Inv. Partners, 552 U.S. at 157. Loss causation, which is disputed in this case, is the concept that "but for the circumstances that the fraud concealed, the investment would not have lost its value." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 649–50 (7th Cir. 1997) (citing Bastian v. Petren Resources Corp., 892 F.2d 680, 683 (7th Cir.), cert. denied, 496 U.S. 906 (1990)). Loss causation "attempts to distinguish cases where the misrepresentation was responsible for the drop in the share's value from those in which market forces are to blame." Ray v. Citigroup Global Mkts., Inc., 482 F.3d 991, 995 (7th Cir. 2007). In this case, the issue is not that defendants' shares dropped in market value; rather, the issue is that plaintiff's exercise of his options allegedly resulted in unexpected tax liability.

According to defendants, plaintiff has not only failed to plausibly allege that defendants caused his loss, but also pleads himself out of court by alleging facts that are inconsistent with

loss causation. Defendants argue that plaintiff's amended complaint "establishes that [his own] decision not to sell his shares is the cause of any losses," and entities "cannot be held liable for losses if subsequent events over which [they] had no control—such as the plaintiff's bad luck or poor management decision—caused the losses." Further, defendants emphasize that the Seventh Circuit has held that losses caused by poor investment performance are not a proper foundation for damages. See Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52, 54 (7th Cir. 1995).

Plaintiff counters that the Supreme Court has held that plaintiffs need only "provide a defendant with some indication of the loss and the casual connection that the plaintiff has in mind," citing Dura Pharmaceutcials, Inc. v. Broudo, 544 U.S. 336, 347 (2005). Plaintiff argues that defendants use "clear hindsight" to argue that he should have "perfectly timed the market" to sell his stock at its now-known height, not later at a "net loss." According to plaintiff, his chosen method of satisfying tax liability is irrelevant to loss causation, because the relevant harm (tax liability) "exists regardless of how [plaintiff] decides to satisfy it." Further, plaintiff argues that even if he did make a "bet" about timing to sell his shares, the post-merger lock-out period restricted him from selling his shares until April 2022, after he received the Form 1099 document from defendants in February 2022.

The court agrees with plaintiff that his alleged harm is his greater-than-anticipated tax liability, which led to his decision to satisfy his tax obligations with money "from other sources." Plaintiff's allegations are not that he merely failed to plan for tax liability after deciding to exercise his shares; instead, plaintiff alleges that he would not have exercised his options in May 2021 (i.e., transaction causation) if he had known that the fair market value of Science 37's stock was $9.06/share, not $1.48/share, and he alleges that his subsequent exercise, which was based on defendants' alleged misrepresentation, caused him to owe more than $16,000 in tax liability

7

(i.e., loss causation).  Put another way, viewing the factual allegations in the light most favorable to plaintiff, plaintiff's harm is not about comparative timing and the market; it is about defendants' alleged miscommunication and its effect on the economic consequences of plaintiff's exercise.  Thus, plaintiff has plausibly alleged causation based on defendant's alleged misrepresentation on Carta.

Whether plaintiff has plausibly alleged proximate causation based on his allegation that Coman and Podolsky's approved his exercise in June 2021 is a separate question.  Plaintiff alleges that when Coman and Podolsky "confirmed" or "approved" his exercise, and defendants caused his harm because Coman and Podolsky did not "inform [him] that the valuation information given to him was incorrect," despite "their knowledge of the conversion formula in the merger agreement."  However, it is implausible to argue that defendants' approval caused plaintiff's decision to exercise his options.  The court agrees with defendants that Science 37 (through Coman and Podolsky) approved plaintiff's decision to exercise his options in June 2021 only <u>after</u> he had decided to exercise them in May 2021.  Plaintiff attempts to salvage this argument by arguing that "[d]efendants made these statements to induce [him] to exercise his options, because they could have rejected [hi]s options exercise but proceeded to approve it based on false valuation."  Plaintiff's amended complaint does not contain this allegation, which is conclusory in any case.  Consequently, the court concludes that plaintiff has plausibly alleged proximate causation only with respect to defendants' alleged misrepresentation of the fair market value of their stock on Carta.

Next, the court evaluates whether the relevant miscommunication is an actionable "misrepresentation" or "omission."  As plaintiff argues, "[t]he "relevant question is 'whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the

8

statement or omission.'" Makor Issues & Rights, Ltd. v. Tellabs Inc., 437 F.3d 588, 595 (7th Cir. 2006) ("Tellabs I")), as modified on denial of reh'g (July 10, 2006), vacated and remanded on other grounds, 551 U.S. 308 (2007). According to defendants, it is not a fraudulent "misrepresentation" to fail to update Carta or warn plaintiff that Carta's current information may be inaccurate. They argue that such a misrepresentation is actionable only in limited circumstances, such as situations with a special or fiduciary relationship that establishes a duty to speak, or active concealment. See Lidecker v. Kendall Coll., 194 Ill. App. 3d 309, 317 (1990).

This argument is intertwined with defendant's argument that plaintiff has not plausibly alleged that defendants acted with the requisite scienter, or "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n. 12 (1976). In the Seventh Circuit, a plaintiff can plead scienter by alleging a defendant's "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." Higginbotham v. Baxter Intern., Inc., 495 F.3d 753, 756 (7th Cir. 2007). Plaintiff alleges that defendants knowingly misrepresented the fair market value of its stock on Carta, or alternatively willfully or recklessly failed to update the information listed on Carta.

However, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C.A. § 78u–4(b)(2), imposes an even more exacting pleading requirement for scienter than Rule 9(b). See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007) (Tellabs II). When evaluating claims pursuant to § 10(b) and Rule 10b-5, courts consider whether the alleged facts collectively give rise to a "strong inference of scienter," which requires a comparative inquiry into "plausible, nonculpable explanations for the defendant's conduct." Id. at 323–24. A complaint survives "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at

324.

In the instant case, the court concludes that plaintiff's allegations are insufficient to plead a claim pursuant to the PSLRA. Principally, plaintiff's explanation for defendants' alleged conduct is not "at least as compelling" as defendants' competing interpretation of the facts: mere mistake in failing to update its stock information. For example, plaintiff does not explain why defendants were motivated to allegedly commit fraud, or what defendants stood to gain by misrepresenting their stock's value. The lack of an alleged motive is not fatal to plaintiff's claim, but "the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint." See id. at 325. In the instant case, plaintiff's amended complaint is devoid of factual allegations that give rise to a "strong inference" that defendants knew or consciously disregarded an obvious risk in May 2021 that option holders had access to mistaken information. Further, plaintiff does not allege that defendants acted with fraudulent intent by failing to update the information on Carta.

This court's conclusion is the same under Federal Rule 9(b)'s relatively lower particularity standard. Because the court concludes that plaintiff has not plausibly alleged that defendants knowingly misrepresented the fair market value of Science 37's shares, or recklessly disregarded a substantial risk that their representation was false, the court dismisses Count I (violations of § 10(b) and Rule 10b-5) and Count II (common law fraud).[2] In the absence of plausible allegations of scienter, the court does not need to determine whether plaintiff has plausibly alleged that defendants intended options holders to rely on mistaken information on Carta, or whether defendants used Carta to satisfy their obligation to conduct periodic valuations

---

[2] Under Illinois law, a fraud claim based on misrepresentation requires: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance. See In re Boeing 737 MAX Pilots Litig., 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022).

of their stock for tax purposes under § 409A and 26 C.F.R. § 1.409A-1.

The court next considers whether plaintiff has plausibly alleged that defendants negligently misrepresented the fair market value of Science 37's shares in Count III. To establish a claim for negligent misrepresentation under Illinois law, a plaintiff must demonstrate: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833–34 (7th Cir. 2007).

The court concludes that plaintiff has not plausibly alleged that defendants had a duty to communicate accurate information to plaintiff, and dismisses Count III. As plaintiff acknowledges, Illinois law generally bars suits for purely economic damages (as here) based on negligent misrepresentation unless the claim falls under certain exceptions. See generally Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 69 (1982). One exception is that parties "in the business of supplying information for the guidance of others in their business transactions" have a duty to avoid negligently conveying false information. See ExxonMobil Oil Corp. v. Amex Constr. Co., 702 F. Supp. 2d 942, 968 (N.D. Ill. 2010) (quoting In re Chicago Flood Litig., 176 Ill.2d 179 (1997)). To demonstrate that a defendant falls under this exception, a plaintiff must demonstrate that defendants supply such information "in the course of its business," which is generally the sale of intangible products. Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC, 877 F. Supp. 2d 614, 619–20 (N.D. Ill. 2012). When a business incidentally supplies information to guide others in their business transactions, that

11

business is not subject to the exception.  Id. at 620.

In the instant case, the court agrees with defendants that plaintiff has not plausibly alleged that defendants were engaged in the business of providing information for others to guide their business transactions.  Rather, according to Science 37's merger announcement (which is incorporated by reference in the amended complaint as Exhibit 3), Science 37 is the "developer of the Decentralized Clinical Training Operating System™" and "provides customers with a platform to empower clinical research while optimizing the experience and outcomes for patients and researchers."  (Emphasis added).  While plaintiff alleges that defendants "engaged in the business of providing information for others in their business transactions by, among other things, inducing [plaintiff] to perform services in exchange solely for stock options and providing . . . information through Carta," this allegation is conclusory and inconsistent with the merger announcement.  In fact, according to the amended complaint, the advisor agreement contemplated that plaintiff would provide information to defendants in their business transaction.

The court also dismisses Counts IV, V, and VI (breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing, respectively) for failure to state a claim.

Regarding Count IV, the court agrees with defendants that plaintiff has not plausibly alleged that defendants breached its contract with plaintiff pursuant to his advisor agreement. The advisor agreement incorporated the Stock Plan, which is governed by Delaware law[3] and requires that "fair market value" is determined "by the Board of Directors in good faith."  Under Delaware law, a plaintiff asserting a breach of contract claim must plead: (1) the existence of a

---

[3] The Stock Plan states that, "[t]he Plan and all awards, sales and grants under the Plan shall be governed by, and construed in accordance with[] the laws of the State of Delaware, as such laws are applied to contracts entered into and performed in such State."

contract; (2) defendant's breach of contract; and (3) damages resulting from the breach." Tani v. FPL/Next Era Energy, 811 F. Supp. 2d 1004, 1023 (D. Del. 2011).

According to plaintiff, defendants failed to determine the fair market value of its shares in good faith. The court rejects this argument. The Stock Plan imposes no contractual obligation to update Carta, or inform options holders when and if the information on Carta inaccurately reflects fair market value. Moreover, the amended complaint contains no allegation that defendants failed to determine the fair market value of their shares in good faith; instead, plaintiff alleges that defendants did not accurately communicate their stock's value. Plaintiff does not allege that defendants' stock was not $1.48/share at some point in time, and as discussed above, plaintiff has not plausibly alleged that defendants failed to update Carta with fraudulent intent.

Moreover, the court agrees with defendants that plaintiff has not alleged a breach of the covenant of good faith and fair dealing. According to plaintiff, "it is a breach of the covenant of good faith and fair dealing for Defendants to inform [plaintiff] of a false Fair Market Value and then secretly determine a different Fair Market Value to be retroactively imposed on Smith at a different date." The amended complaint does not contain this allegation. In any case, the court agrees with defendants that the covenant of good faith does not independently impose a duty upon defendants; rather, the covenant "implies terms in an agreement to fill gaps or to account for unanticipated developments." Life Plans, Inc. v. Security Life of Denver Ins. Co., 800 F.3d 343, 355 (7th Cir. 2015) (citing Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 441 (Del. 2005)). Plaintiff does not allege that defendants acted arbitrarily or unreasonably under the advisor agreement in fulfilling their obligation to determine the fair market value of their shares in good faith. Id.

Last, the court dismisses plaintiff's claim for promissory estoppel. To state a claim for promissory estoppel, plaintiff must allege that: (1) defendants made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was foreseeable and expected by defendants; and (4) plaintiff relied on the promise to his detriment. See Matthews v. Chicago Transit Authority, 51 N.E.3d 753, 780 (Ill. 2016). According to plaintiff, defendants promised him that the fair market value of its stock at the time of his exercise was $1.48/share. The court, however, concludes that plaintiff has not plausibly alleged that defendants, through the advisor agreement or the Stock Plan, promised to provide him with accurate, updated fair market value information through Carta. Thus, the court cannot sustain his claim for promissory estoppel, and the court grants defendants' motion to dismiss plaintiff's amended complaint (Doc. 17).[4]

## CONCLUSION

For the reasons stated above, the court grants defendants' motion to dismiss plaintiff's amended complaint (Doc. 17) for failure to state a claim.

**ENTER:**

Robert W. Gettleman
**Robert W. Gettleman**
**United States District Judge**

**DATE: December 20, 2023**

---

[4] In his response, plaintiff requests leave to file a second amended complaint in the event that the court grants defendants' motion. The court will not rule on plaintiff's request until a proper motion is filed before this court.